IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 4:19-CR-137-O |
| v. | |
| MICHAEL KYLE SEWELL | |

## FACTUAL RESUME

INFORMATION:

    Count One:    Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization in Violation of 18 U.S.C. §2339B.

PLEA:

    Count One:    Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization in Violation of 18 U.S.C. §2339B.

PENALTIES:

The penalties the Court can impose include:

a. imprisonment for a period not more than 20 years;

b. a fine not to exceed $250,000;

c. a term of supervised release of any term of years or life. If the Defendant violates the conditions of supervised release, he could be imprisoned for an additional period of time;

d. a mandatory special assessment of $100;

e. restitution to victims or to the community, which may be mandatory under the law; and

f. costs of incarceration and supervision.

ESSENTIAL ELEMENTS OF THE OFFENSE:
To establish the offense alleged in Count One of the information, the government must prove the following elements beyond a reasonable doubt:

*First*:  The defendant knowingly conspired with another person to provide material support or resources to a designated foreign terrorist organization; and

*Second*:  The defendant did so knowing that the organization was a designated terrorist organization, or that the organization had engaged or was engaging in terrorist activity or terrorism; and

*Third*:  The defendant is a citizen of the United States.

STIPULATED FACTS:
The defendant stipulates that the following facts are true and correct:
1. Defendant Michael Kyle Sewell ("Sewell") is a natural-born United States citizen.
2. Coconspirator 1 (CC1) is a citizen of the United States.
3. Lashkar-e-Tayyiba (LeT) is a Pakistani-based Islamic extremist group. LeT was at all relevant times designated by the U.S. Department of State as a foreign terrorist organization (FTO), and is currently designated as such.
4. In late October, 2018, Sewell conversed via an online social media service with an individual he believed to be a radical Islamic extremist. The individual was, unbeknownst to Sewell, an FBI Undercover Employee (UCE 1). On or about October 23, 2018, UCE 1 informed Sewell that he/she would be joining LeT. Sewell expressed support for LeT and encouraged UCE 1 to fight in support of LeT.
5. On or about November 2, 2018, UCE 1 told Sewell he/she was in Pakistan and was about to join LeT. UCE 1 explained that after joining, he/she would be out of contact. UCE 1 explained to Sewell that if Sewell wanted to join LeT, Sewell could contact a facilitator. UCE 1 then provided Sewell with the online contact information of an LeT member who could facilitate travel to join LeT. Unbeknownst to Sewell, the purported facilitator was an FBI Undercover Employee (UCE 2).
6. On or about November 3, 2018, Sewell initiated an online discussion with UCE 2. During the conversation, Sewell stated that he wanted to support LeT.
7. In early November, 2018, Sewell conversed with coconspirator 1 (CC1) via CC1's online social media account. CC1 told Sewell that he wanted to go to paradise and be a soldier of God, and sought guidance from Sewell about how to practice Islam.
8. On November 5, 2018, CC1 told Sewell that he wanted to join ISIS. Sewell replied to CC1 that he should not join ISIS because ISIS had no territory. CC1 then asked Sewell which group Sewell thought he should join. Sewell replied that LeT was worth joining. CC1 then asked Sewell for "connections" associated with LeT. In response, Sewell provided CC1 with UCE 2's online contact information and told CC1 to contact UCE 2. Sewell advised CC1 that UCE 2 was in Pakistan and could help CC1 join LeT. CC1 later told Sewell that he had sent UCE 2 a message.
9. After referring CC1 to UCE2, Sewell continued to communicate online with UCE2. Sewell vouched for CC1 to UCE2, and encouraged UCE2 to allow CC1 to join LeT.
10. Sewell also continued communicating online with CC1. Sewell and CC1 discussed what CC1 should say to UCE 2 to gain UCE 2's trust, and be permitted to join LeT. Sewell told CC1 that LeT was a well-funded group in Pakistan operating in Kashmir, Afghanistan, and India, and told CC1 that it was a good group to join. After learning that CC1 had made arrangements with UCE2 to join LeT, Sewell told CC1 that he was happy for him and asked CC1 to contact him when CC1 arrived in Pakistan.
11. Thereafter, CC1 and UCE 2 continued to converse online regarding CC1's plans to fight in support of LeT. UCE 2 informed CC1 that if he could purchase a ticket to London, UK, arrangements could be made to get him to Pakistan from there. On December 19, 2018, CC1 informed UCE 2 that he had purchased a ticket from John F. Kennedy (JFK) Airport in New York, New York to London, UK, which would depart on February 7, 2019. CC1 traveled to the airport as planned, and was arrested there on February 7, 2019.
12. Sewell was arrested in Arlington, Texas on February 8, 2019. Following his arrest, Sewell waived his rights and agreed to an interview. During the interview,

Sewell confessed to contacting CC1 online, steering CC1 to join LeT, and helping CC1 join LeT by introducing CC1 to another person online who Sewell believed to be a facilitator for LeT. Sewell also admitted that prior to contacting CC1, he had done research on LeT and knew that LeT was a designated foreign terrorist organization.

SIGNED on this 26 day of April, 2019.

_____  _____
MICHAEL KYLE SEWELL                    BROOK ANTONIO, II
Defendant                              Attorney for Defendant

**Factual Resume - Page 5**